**Lannis Bearl McDANIEL, Appellant,**

v.

**Reginald Eugene HALE and Johnny Goodnoh Trucking Company, Appellees.**

No. 07–93–0146–CV.

Court of Appeals of Texas, Amarillo.

Dec. 30, 1994.

Rehearing Overruled Feb. 6, 1995.

Carr Fouts Hunt Craig Terrill & Wolfe, Donald M. Hunt, Gary M. Bellair, Lubbock, William K. Altman & Associates, William K. Altman, Wichita Falls, for appellant.

Underwood Wilson Berry Stein & Johnson, Kelly Utsinger, Kevin Parker, Amarillo, for appellees.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

## ON MOTION FOR REHEARING

POFF, Justice.

Upon consideration of appellees' motion for rehearing, we overrule the motion, withdraw our original opinion and substitute this opinion in its place.

Lannis Bearl McDaniel appeals from a judgment entered in a bill of review proceeding. As plaintiff in the original lawsuit, McDaniel sought damages from defendants Reginald Eugene Hale and Johnny Goodnoh Trucking Company (Goodnoh Trucking) for injuries suffered in a traffic accident.[1] All parties appeared and participated in a trial before a jury which returned its verdict on June 8, 1988. By its verdict, the jury found McDaniel should be awarded $82,068 in actual damages and $250,000 in exemplary damages. On June 16, 1988, Hale and Goodnoh Trucking filed a motion for new trial in which they contended the damages were excessive.[2] The trial judge signed a judgment on June 23, 1988, but the clerk of the trial court failed to give Hale and Goodnoh Trucking or their attorney notice of the judgment as required by law.[3] Counsel for Hale and Goodnoh Trucking, Steve Briley, did not learn the judgment had been signed until April 6, 1989.[4] By then it was too late to appeal the judgment and Hale and Goodnoh Trucking's motion for new trial had been overruled by operation of law. Briley filed a petition for bill of review on behalf of his clients the next day.[5]

---

1. The lawsuit was denominated Cause No. 7537.

2. Hale and Goodnoh Trucking knew they were filing their motion for new trial before the judgment was signed. There is no prohibition against doing this. "A motion for new trial, if filed, shall be filed *prior to* or within thirty days after the judgment ... is signed." Tex.R.Civ.P. 329b(a) (emphasis added).

3. Texas Rule of Civil Procedure 306a(3) states: "When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed."

4. The defendants themselves had not previously learned of the signing of the judgment.

5. The bill of review proceeding was denominated Cause No. 8123.

Upon McDaniel's demand,[6] the trial on the bill of review was conducted before a jury. One of the jury's answers was such as to defeat Hale and Goodnoh Trucking in their attempt to have the underlying judgment set aside by means of their bill of review. But, upon Hale and Goodnoh Trucking's motion for judgment notwithstanding the verdict, the trial court disregarded that particular jury answer and granted the petition for bill of review. The trial court set aside the underlying judgment and ordered a new trial.[7]

Upon retrial of McDaniel's suit against Hale and Goodnoh Trucking, McDaniel again prevailed, although he was awarded a lesser amount of damages than in the first trial. McDaniel now appeals on the ground that the trial court erred in granting Hale and Goodnoh Trucking's petition for bill of review.[8] McDaniel prays that we reverse the trial court's order granting the bill of review and reinstate the original judgment.

## I. REQUIREMENTS FOR SUCCEEDING UPON A BILL OF REVIEW IN TEXAS

"A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment, which is no longer appealable or subject to motion for new trial." *Baker v. Goldsmith,* 582 S.W.2d 404, 406 (Tex.1979). According to the Texas Rules of Civil Procedure, "[o]n expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by a bill of review for *sufficient cause,* filed within the time allowed by law." Tex.R.Civ.P. 329b(f) (emphasis added). The rules themselves do not define "sufficient cause" but the Texas Supreme Court, in a series of well-known cases, has set out the requirements that must

be met in order to obtain relief by bill of review. As the following review of these cases will show, the requirements for obtaining a bill of review differ depending on the particular fact situation.

### A. *Alexander v. Hagedorn*

■ Any discussion of the Texas bill of review proceeding must begin with the celebrated case of *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950). This case, familiar to nearly every law school graduate across the Lone Star State, involved a mule—specifically, a mule that wandered onto a highway in front of a car driven by a Mrs. W.C. Alexander. In order to avoid striking the mule, Mrs. Alexander was compelled to steer her automobile into a ditch. This caused the car to overturn, thereby injuring the unfortunate driver.[9]

Mrs. Alexander and her husband filed suit against one William Hagedorn, alleging that Hagedorn was responsible for Mrs. Alexander's injuries because he was the owner of the mule and had permitted it to run at large and unattended upon the highway in violation of a local stock law. As is common, citation was served upon the defendant Hagedorn by a deputy sheriff. Unlike the typical defendant, however, the 75–year–old Hagedorn was unable to read or write the English language. That being the case, when Hagedorn was served with the citation, he requested the deputy sheriff to explain its meaning. The deputy informed Hagedorn that he was being sued and was required to appear in district court at Lockhart on September 1, 1947, to answer the suit.

Dutifully, Hagedorn went to the district courtroom on September 1. Finding nobody there, he went to the district clerk's office and told the clerk he had come to answer the

6. McDaniel, of course, was the defendant in the bill of review proceeding. Hale and Goodnoh Trucking were the bill of review plaintiffs.

7. The trial court's order granting the petition for bill of review and granting Hale and Goodnoh Trucking a new trial was an interlocutory order. McDaniel attempted an appeal of that order to this court but we dismissed the appeal for want of jurisdiction because of the order's interlocutory nature. *See* McDaniel v. Hale and Johnny

Goodnoh Trucking Co., No. 07–89–0403–CV (Tex.App.—Amarillo, February 11, 1991, no writ) (not designated for publication).

8. McDaniel advances four points of error, each of which declares the trial court erred in granting the bill of review. We will consider the four points of error as one.

9. The mule, apparently, was unharmed.

Alexanders' suit. The clerk told Hagedorn that no court would be held that week and, upon Hagedorn's request, agreed to notify him when he was to return and defend the suit. Hagedorn then returned home and did nothing more about the suit until the next April when he learned that garnishment had been run against his bank account following a default judgment rendered against him on December 8, 1947. Hagedorn then employed attorneys who filed a bill of review action. The trial court granted the bill of review and that decision was upheld by the Austin Court of Appeals. The Alexanders appealed to the Texas Supreme Court.

The Supreme Court declared that in order for a litigant to successfully invoke a bill of review proceeding to set aside a final judgment, "he must allege and prove:

(1) a meritorious defense to the cause of action alleged to support the judgment,

(2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party,

(3) unmixed with any fault or negligence of his own."

*Id.* 226 S.W.2d at 998. While this was by no means the first time the Texas courts had enunciated the requirements for a successful bill of review, *see Hanks v. Rosser,* 378 S.W.2d 31, 37 (Tex.1964) (Griffin, J., dissenting), *Alexander v. Hagedorn* has gone down in history as the landmark decision concerning the bill of review in Texas. Nearly every subsequent opinion dealing with the bill of review has cited the *Hagedorn* opinion as its guide.

After succinctly setting forth the three requirements for setting aside a final judgment upon a bill of review, the Supreme Court proceeded to determine that Hagedorn was not entitled to have the judgment against him set aside because he did not meet the final two requirements. The Supreme Court agreed with the lower courts that Hagedorn had a meritorious defense to the cause of action, namely: the mule did not belong to him. But, the court found that Hagedorn had not been prevented from asserting that defense by the fraud, accident or wrongful act of the Alexanders. Nor did the court find that Hagedorn was free of negligence. In short, although it was not his mule in the middle of the road, Hagedorn was unable to escape liability.[10]

*Alexander v. Hagedorn* is the prototypical bill of review case, *i.e.,* a case where a defen-

---

10. In a dissent joined by Justice Taylor, Justice Smedley took issue with what he viewed as an inequitable result, declaring:

I find it impossible to agree to the opinion of the majority and the judgment reversing and rendering the judgments of the Court of Civil Appeals and the District Court, because that opinion and the resulting judgment treat the applicable equitable rules as inflexible rules, ignoring the fact that the rules of equity are in a measure flexible and adaptable to particular exigencies. In doing so the Court is permitting one party in this case to suffer gross wrong at the hands of the other party, and is denying to this Court, although it is a court of equity and this is an equitable proceeding, authority to apply the established rules to the peculiar facts of this case in such way as to prevent gross injustice. I do not suggest that the rules be changed or disregarded, but only that they should be reasonably and fairly adapted and fitted to the facts of the case. If this cannot be done, what is a court of equity for?

The majority admit and must admit that respondent Hagedorn had and has a meritorious defense to the original suit. The trial court found from abundant evidence that respondent Hagedorn "had a complete and absolute de-

fense". He did not own the mule that caused the accident and he did not permit it to run at large. According to the opinion of the majority respondent is required to pay petitioners more than $3,000 as damages for which he was in no way responsible.

*Alexander v. Hagedorn,* 226 S.W.2d at 1003 (Smedley, J., dissenting).

The majority seemed to recognize the unfairness of the result but, in words that have since been quoted in many cases, said:

Because it is fundamentally important in the administration of justice that some finality be accorded to judgments, these essentials [the three bill of review requirements] have been uniformly recognized by our courts; therefore, bills of review seeking relief from judgments "are always watched with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted"; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. As said by the Supreme Court of California, "Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice."

*Alexander v. Hagedorn,* 226 S.W.2d at 998 (citations omitted).

dant suffers a default judgment and does not learn of it until the time to file a motion for new trial or to appeal the judgment has passed. The defendant seeks to have the default judgment set aside in order that he may have an opportunity to show he has a meritorious defense to the cause of action alleged by the successful plaintiff. Contingent upon satisfying the three bill of review requirements, the defendant is provided an avenue to defend the allegations against him.

As later recognized by the Supreme Court, *Alexander v. Hagedorn* is representative of the "usual" bill of review case, and the three requirements set forth in the case invariably apply in such cases. *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d 240, 243 (Tex.1974). But, while the rule set forth in *Hagedorn* "is entirely sound as applied to a defendant who suffered a default judgment after proper personal service of citation, ... it does not govern the disposition of all bill of review cases." *Id.* at 244. The first case to add a twist to the *Hagedorn* rule was *Hanks v. Rosser,* 378 S.W.2d 31 (Tex.1964).

### B. Hanks v. Rosser

■ Unlike *Hagedorn,* the *Hanks v. Rosser* case did not involve a wayward mule. Like *Hagedorn,* however, *Hanks* arose out of a default judgment. But *Hanks* was not the usual bill of review case.

Jerry Hanks was sued by Joseph Rosser. Hanks was served with process and he telephoned an attorney, Thomas, who told Hanks to bring the papers to his office. Hanks never did so, however, and appearance day passed without an answer being filed. Thomas learned that a default judgment was going to be taken against Hanks so he called Hanks and advised him to file an answer. Thomas declined to represent Hanks, but suggested he contact an attorney named A.A. DeLee. Hanks visited DeLee the next day and explained the situation. DeLee immedi-

ately telephoned the district clerk's office and was informed by the clerk that while the suit was ripe for action, no judgment had yet been taken. DeLee then prepared an answer and carried it with him to the district clerk's office the next morning. Upon being informed again by the district clerk that judgment had still not been taken, DeLee filed the answer. In reality, a default judgment had been taken the previous day. Had DeLee known that to be the case, he would have filed a motion for new trial instead of an answer.

Hanks and DeLee did not learn the default judgment had been taken until two months later when Rosser had an execution on the default judgment issued by the district court and delivered to the sheriff for proper levy and sale of a drugstore owned by Hanks. DeLee promptly filed a bill of review on Hanks' behalf, in which he contended, *inter alia,* that he did not file a motion for new trial only because he relied on false information from the district clerk. The trial court granted the bill of review but the Beaumont Court of Civil Appeals reversed the judgment of the trial court and reinstated the default judgment.

In analyzing the case, the Supreme Court recited the general rules concerning the granting of a bill of review as set forth in *Hagedorn.* The court then proceeded to liberalize those general rules to deal with the particular fact situation at hand.[11] Specifically, the court held that "[s]ince there was a reliance on the erroneous information given by the clerk, it was unnecessary for Hanks to show ... some accident, fraud, or wrongful act of the opposing party." *Hanks v. Rosser,* 378 S.W.2d at 34. In essence, the second *Hagedorn* requirement was expanded to read:

(2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party *or* which he was

11. *"Hanks v. Rosser* indicates a more liberal outlook by the court in the application of the elements necessary for equitable relief set out in the much criticized *Hagedorn* case." John Trigg Cabaniss, Note, *PROCEDURE—Equitable Bill of Review—Default Judgment Which Had Become Final Set Aside Where Failure To File Timely Motion For New Trial Was Result of Misinforma-*

*tion Given by Clerk of Court,* 43 Tex.L.Rev. 114, 118 (1964) [hereinafter *Equitable Bill of Review* ]. As noted by the Dallas Court of Appeals, *"Hanks* reduced substantially the burden upon the defendant [in the underlying case] in obtaining a bill of review." *Parker v. Gant,* 568 S.W.2d 163, 165 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

prevented from making because of erroneous information given by the court clerk.

The court additionally recognized that the erroneous information provided by the district court clerk did not prevent Hanks from filing an answer to the allegations against him. Rather, the clerk's erroneous information caused Hanks to miss his chance to file a motion for new trial. Even under an expanded second requirement, however, a bill of review could not be granted. This was because while the clerk provided erroneous information, that information did not prevent Hanks from filing an answer and thereby advancing a meritorious defense to the cause of action alleged to support the judgment.

Recognizing the inequity that would result in a strict application of the *Alexander v. Hagedorn* rules, the Supreme Court devised a new test for the special situation with which it was confronted. Under the new test, a bill of review plaintiff could succeed by alleging and proving:

(1) a failure to file a motion for new trial,

(2) which he was prevented from filing by the misinformation of an officer of the court acting within his official duties, and

(3) the three requirements that must be proved in order to have a new trial granted where there has been a default judgment, namely:

(a) the failure to answer the petition was not intentional or the result of conscious indifference;

(b) a meritorious defense to the cause of action alleged to support the judgment; and

(c) no injury will result to the opposite party by granting the bill of review. *See id.* at 34–35.

■ The Supreme Court decided that in examining whether there was any fault or negligence on the part of bill of review plaintiff Hanks in failing to answer the plaintiff's petition, fault or negligence should be measured by the standard for negligence of the non-answering defendant in a motion for new trial situation [12] rather than by the standard of negligence for a complainant in a typical bill of review proceeding.[13] This was because had Hanks filed a motion for new trial, his negligence in not filing an answer would have been measured by the motion for new trial standard. The *Hanks v. Rosser* opinion effectively put the bill of review plaintiff in the same position he would have been in had he received correct information from the court clerk and filed a timely motion for new trial.[14]

It is noteworthy that the opinion does not require the bill of review plaintiff to show an absence of negligence in failing to file a motion for new trial. Nor is such a plaintiff required to show that his failure to file a motion for new trial was neither intentional nor the result of conscious indifference.

The court went on to find that Hanks fulfilled the five requirements to obtain relief from the default judgment by bill of review. More important than the result of the particular case, however, was the fact that new requirements to succeed upon a bill of review had been created in a limited fact situation.[15]

### C. *Petro–Chemical Transport, Inc. v. Carroll*

■ In the first paragraph of the Supreme Court's opinion in *Petro–Chemical Trans-*

**12.** Where a movant for new trial has suffered a default judgment, he can have his motion for new trial granted by showing that, *inter alia*, his failure to answer the lawsuit was not intentional or the result of conscious indifference. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939).

**13.** Thus, the *Hanks v. Rosser* opinion made it much easier for a bill of review plaintiff to succeed. It is undoubtedly much easier to show that one's failure to answer a petition was not intentional or the result of conscious indifference

than to show that such failure involved a complete absence of fault or negligence.

**14.** *Equitable Bill of Review*, 43 Tex.L.Rev. at 115 n. 3.

**15.** As noted by Justice Griffin in dissent, "[t]he law with regards to bills of review as it has existed since the beginning of Texas jurisprudence has been changed by the majority opinion." *Hanks v. Rosser*, 378 S.W.2d at 36 (Griffin, J., dissenting).

*port, Inc. v. Carroll*, 514 S.W.2d 240 (Tex. 1974), we learn that "[a]ll parties appeared and participated in the [underlying] trial before a jury." *Id.* at 242. This was a bill of review proceeding arising out of a full-blown trial on the merits—its nativity had nothing to do with a default judgment.

As in the case currently before the court, the district clerk in *Petro–Chemical* failed to notify the defendant that the trial judge had signed a judgment. Under the predecessor rule to current Texas Rule of Civil Procedure 306a(3), the clerk was required to "[i]mmediately upon the signing of any final judgment or other appealable order, . . . mail a postcard notice thereof to each party to the suit." *Id.* at 244. As noted by the Supreme Court, "[t]he obvious purpose of this rule is to insure that, insofar as practicable, parties adversely affected by a final judgment or other appealable order have an opportunity to attack the same by motion for new trial or appeal." *Id.* Because of the clerk's failure to inform it that the judgment had been signed, defendant Petro–Chemical missed the deadlines for filing a motion for new trial and advancing an appeal.

Defendant Petro–Chemical based its right to a bill of review on the clerk's failure to send the required notice. The Supreme Court agreed, holding that "a bill of review may be predicated on the clerk's failure to send the [required] notice." *Id.* at 245.[16] The court noted, however, that the fact the defendant Petro–Chemical had lost its chance to appeal did not excuse it from showing a meritorious defense in the bill of review proceeding. In other words, the loss of the chance to appeal, like the loss of the chance to file a motion for new trial in *Hanks*, did not constitute a meritorious defense in and of itself. Rather, a defendant in Petro–Chemi-

cal's situation would be required to "show, *prima facie* at least, a meritorious ground of appeal." *Id.* The court defined a meritorious ground of appeal as one which, had it been presented to the appellate court as designed, "might, and probably would, have [caused the judgment to be] reversed." *Id.*

Unlike, the complainant in *Hanks*, bill of review plaintiff Petro–Chemical was not put in exactly the same position it would have been in had it received notice of the judgment against it. The Supreme Court declared that the bill of review plaintiff "had the burden of showing that its failure to file a motion for new trial or appeal was not due to any fault or negligence on the part of [it] or its counsel."[17] Accordingly, in order for Petro–Chemical to succeed upon its bill of review, it was required to allege and prove:

(1) a failure to file a motion for new trial or a failure to advance an appeal,

(2) caused by the failure of the court clerk to give the required notice that a judgment had been signed;

(3) unmixed with any fault or negligence of its own; and

(4) a meritorious ground of appeal (prima facie proof only).

### D. Baker v. Goldsmith

*Baker v. Goldsmith*, 582 S.W.2d 404 (Tex. 1979) presented a factual scenario much like that in *Hanks v. Rosser*. Edward and Juliette Goldsmith were sued by Vernon and Audane Baker. Upon being served with citation, Edward Goldsmith sent a letter to the district judge of the court in which the suit was pending wherein he substantially denied the allegations in the Baker petition. Although the letter was received by an employ-

---

16. The court found no material difference between a court clerk's affirmative act of giving erroneous information in the performance of the clerk's official duties (as in *Hanks*) and a court clerk's failure to send the required notice.

17. Thus, *Petro–Chemical* is not consistent with *Hanks*. In both cases, the bill of review plaintiff was prevented from filing a motion for new trial. The fact that the complainant in *Hanks* received misinformation from the court clerk while the complainant in *Petro–Chemical* received no information from the clerk at all is not a material

difference. *See, Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d at 244. The only remaining difference is that the complainant in *Hanks* did not answer the original lawsuit and suffered a default judgment while the complainant in *Petro–Chemical* participated in a full-blown trial. This difference does not appear to be reason for requiring the bill of review plaintiff in *Petro–Chemical* to show an absence of fault or negligence in failing to file a motion for new trial but not requiring the bill of review plaintiff in *Hanks* to make a similar showing.

ee in the Travis County Courthouse mail-room, the letter was not filed with the papers of the case. A default judgment was eventually rendered against the Goldsmiths. But the Goldsmiths received no notice of the judgment against them until after the time for filing a motion for new trial had passed. The Goldsmiths sought relief by bill of review.

As in *Hanks*, the bill of review plaintiffs suffered a default judgment. As was also the case in *Hanks*, the bill of review plaintiffs were prevented from filing a motion for new trial as a result of an official mistake by a court officer.[18] But the Supreme Court did not recite the *Hanks* requirements. *See id.* at 407. Nowhere in the opinion is there any intimation that the Goldsmiths, as bill of review plaintiffs, needed only to show that their failure to answer was not intentional or the result of conscious indifference.

However, the opinion did not expressly disapprove the relaxed requirements of *Hanks v. Rosser*. In fact, the question of whether the bill of review plaintiffs needed to show a complete absence of negligence in failing to answer the petition or merely that their failure to answer the petition was not intentional or the result of conscious indifference was not in issue. Rather, in response to the Bakers' contention that there was no proof to support the conclusion that the Goldsmiths acted without negligence, the court found that the Goldsmiths were not at fault. Accordingly, we do not read *Baker* as displacing the requirements set forth in *Hanks*.

## II. BILL OF REVIEW REQUIREMENTS IN THE CASE AT BAR

▇▇ Upon reviewing the four Supreme Court opinions above, it may not at once be entirely clear what the bill of review requirements are in the case at bar. After digesting various court of appeals decisions discussing

the Supreme Court opinions, one could logically argue that the *Hanks v. Rosser* requirements apply. For example, in *Parker v. Gant*, 568 S.W.2d 163 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.), the Dallas Court of Appeals said:

As we read *Hanks*, where the clerk gives misinformation, the Supreme Court eliminated the *Hagedorn* requirements (1) that the defendant was prevented from answering by the fraud, accident, or wrongful act of the other party and (2) that the failure to answer was unmixed with any fault or negligence on the defendant's part. Instead of freedom from fault or negligence in failing to answer, the court required a lesser standard that the failure to answer was not intentional or the result of conscious indifference. In lieu of the *Hagedorn* requirement of proving that the defendant was prevented from answering by some wrongful act of the opposite party, the *Hanks* court substituted the requirement of misinformation by the clerk and a showing that no injury will result to the opposite party. Thus, in the situation of misinformation by the clerk, *Hanks* reduced substantially the burden upon the defendant in obtaining a bill of review.

Later, in *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240, 244 (Tex. 1974), the Supreme Court stated that the failure of the clerk to send the postcard notice of entry of judgment as required by Tex.R.Civ.P. 306d is equivalent to misinformation by the clerk. Consequently, that court concluded that the *Hanks v. Rosser, supra*, standard applied where the clerk failed to send notice of entry of judgment thereby preventing the defendant from timely filing a motion for new trial and from perfecting his appeal.

*Parker v. Gant*, 568 S.W.2d at 165.

Reading just the last line of the quote from the *Parker* opinion above, one might readily

---

18. The supreme court declared:
 [W]here an officer of the court gives wrong information which prevents the filing of a motion for new trial, the complainant in a bill of review is excused from showing that the judgment was rendered as the result of the wrongful conduct of the opposite party. Consistent with this, it is also acceptable for the com-

plainant to allege and prove that he was prevented from presenting his contentions in the former action by a mistake or error of the court or a functionary thereof in the discharge of official duties.
*Baker v. Goldsmith*, 582 S.W.2d at 407 (citations omitted).

conclude that the *Hanks* standard applies to the case before us. After all, in the case at bar, the clerk failed to send notice of entry of judgment thereby preventing defendants Hale and Goodnoh Trucking from timely filing a motion for new trial and from perfecting appeal. But the last line of the above quote mischaracterizes the *Petro–Chemical* decision in one respect. As we learn from our discussion of the *Petro–Chemical* case in Part I of this opinion, the Supreme Court did not espouse exactly the same requirements for succeeding upon a bill of review in *Petro–Chemical* as it did in *Hanks*. While the *Petro–Chemical* court did not require the bill of review plaintiff to show some wrongful act of the opposite party (as was the case in *Hanks* ), the court did not excuse the bill of review plaintiff from proving the traditional *Hagedorn* requirement that he was free from any fault or negligence. Thus, the Dallas Court of Appeals' statement in *Parker* that the Supreme Court determined the *Hanks v. Rosser* standard applied in *Petro–Chemical* is misleading. One cannot read *Parker v. Gant* and definitively determine whether the *Hanks* standard applies to the case at bar.

*Parker* is not the only case in which the Dallas Court of Appeals followed the requirements set forth in *Hanks*. *See Pope v. Moore*, 729 S.W.2d 125, 127 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Several other courts of appeals have also followed *Hanks*. *See City of Laredo v. Threadgill*, 686 S.W.2d 734, 735 (Tex.App.—San Antonio 1985, no writ); *Vaughan v. American Indem. Co.*, 592 S.W.2d 22, 23 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *Gonzalez v. Mann*, 584 S.W.2d 928, 931 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Buckler v. Tate*, 572 S.W.2d 562, 564 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

In each of the court of appeals cases cited above, however, the bill of review proceeding arose out of a default judgment.[19] None of the above-cited court of appeals cases, including *Parker*, dealt with bills of review wherein the underlying judgment followed a trial on the merits as was the case in *Petro–Chemical*. As mentioned earlier in footnote 17 of this opinion, we believe the same bill of review requirements should apply in all situations where a losing defendant has been prevented from filing a motion for new trial or perfecting an appeal. We see no basis for crafting different requirements for a bill of review in default judgment cases and in cases where the parties appeared and participated at trial.

Regardless of our belief and opinion, however, the Supreme Court has enunciated different rules in the two situations. In the default judgment situation, a litigant who has been prevented from filing a motion for new trial or perfecting an appeal must meet the liberalized requirements of *Hanks v. Rosser*. In a situation where the parties have participated at trial and the losing party has been prevented from filing a motion for new trial or perfecting an appeal, the requirements set forth in *Petro–Chemical* control.[20]

 In the current case, all parties appeared and participated at trial. Hale and Goodnoh Trucking allege that the court clerk failed to send notice of the judgment and

---

**19.** In *Rund v. Trans East, Inc.*, 824 S.W.2d 713, 717 (Tex.App.—Houston [1st Dist.] 1992, writ denied), the *Hanks* standard was applied where the bill of review proceeding grew out of the dismissal of a case for want of prosecution.

**20.** In at least one case, the critical factual distinction between *Hanks* and *Petro–Chemical* (default judgment versus trial on the merits) was missed. *See Edgin v. Blasi*, 706 S.W.2d 353, 355 (Tex.App.—Fort Worth 1986, no writ) (opinion erroneously states that *Petro–Chemical* was a default judgment case).

This key distinction was also missed in a law review article concerning bills of review. *See* Jay S. Siskind, *Bill of Review—The Last Chance*, 20 S.Tex.L.J. 237, 240–42 (1980) [hereinafter *Last Chance* ]. In that article, the author believed *Hanks* could be distinguished from *Petro–Chemical* by the fact that *Hanks* involved a clerk's affirmative misinformation while *Petro–Chemical* dealt with a clerk's failure to perform a required act. He concluded that

> the *Hanks v. Rosser* criteria, if it is at all applicable, is limited to the peculiar facts of that case. That is to say that unless he can show the clerk gave affirmative misinformation, the movant in a bill of review proceeding should be prepared to prove that the rendition of the judgment at the original trial did not come about through any fault or negligence of the movant or his counsel.

*Id.* at 242. We do not agree with the author's conclusion.

that therefore, they lost their chance to challenge the judgment by motion for new trial and by appeal. The case before us is clearly comparable to *Petro–Chemical.* Accordingly, for Hale and Goodnoh Trucking to succeed upon their petition for bill of review, they were required to satisfy the requirements set forth in *Petro–Chemical. See Rohdie v. Washington,* 641 S.W.2d 317, 319 (Tex.App.—El Paso 1982, writ ref'd n.r.e.) ("In this situation where both parties participated in the trial but the loser was deprived of an appeal, the procedure outlined in *Petro–Chemical Transport, Inc. v. Carroll* ... should be followed."); *Thomason v. Freberg,* 588 S.W.2d 821, 824 (Tex.Civ.App.—Corpus Christi 1979, no writ).[21] Specifically, Hale and Goodnoh were required to allege and prove the following:

(1) a failure to file a motion for new trial or a failure to advance an appeal,

(2) caused by the fraud, accident or wrongful act of the opposing party or by an official mistake,[22]

(3) unmixed with any fault or negligence of their own, and

(4) a meritorious ground of appeal (prima facie proof only).

*Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 244–46.

## III. HAVE THE BILL OF REVIEW REQUIREMENTS BEEN SATISFIED?

█ Having determined the requirements that Hale and Goodnoh Trucking were required to satisfy to succeed upon their bill of review, we will now discuss whether they met those requirements. Consistent with the procedure to be followed in a bill of review proceeding, we will first discuss the requirement of a meritorious ground of appeal.[23]

In *Baker v. Goldsmith,* the Supreme Court set forth the trial procedure to be utilized for bills of review. As noted earlier in this opinion, *Baker* involved a defendant who had suffered a default judgment and had therefore been unable to present a defense to the allegations contained in the plaintiffs' petition. The procedure set forth in *Baker* definitely applies to default judgment situa-

---

**21.** In *Thomason v. Freberg,* the Corpus Christi Court of Appeals declared:

At the outset, we note that this is not the usual type of bill of review proceeding. Most bill of review proceedings follow the rendition of a default judgment. In this case, however, the original suit had been tried on its merits. We are, therefore, placed in the similar situation presented by the appeal in *Petro–Chemical Transport Co., Inc. v. Carroll,* 514 S.W.2d 240 (Tex.Sup.1974).

*Thomason v. Freberg,* 588 S.W.2d at 824.

**22.** An official mistake includes erroneous information given by an official court functionary as in *Hanks. Baker v. Goldsmith,* 582 S.W.2d at 407; *Gracey v. West,* 422 S.W.2d 913, 915–16. (Tex.1968). An official mistake also occurs where a court official fails to perform required duties. *Baker v. Goldsmith,* 582 S.W.2d at 407 (it is acceptable for a bill of review plaintiff to show "a mistake or error of the court or a functionary thereof in the discharge of official duties"). Perhaps the most common example of this type of official mistake is where, as in *Petro–Chemical,* the court clerk fails to send the required notice of judgment. *See generally* Ruben Brochner, Jr., Comment, *The Snares and Pitfalls of the Equitable Bill of Review in Texas,* 21 Tex. Tech L.Rev. 763, 768–69 (1990); *Last Chance,* 20 S.Tex.L.J. at 240.

**23.** A well-known legal maxim is that equity will not do a vain thing. Pursuant to this maxim,

Texas courts have subscribed to the view that a petition for an equitable bill of review will not be granted where the petitioner has no meritorious defense because without such a defense, the same judgment would be entered on retrial. *See McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706, 710 (1961) (where a defendant "has no meritorious defense to the suit, the setting aside of the judgment would be a vain act and a trespass on the time of the court"). Bill of review plaintiffs are now required to make a preliminary showing of a meritorious defense so as to assure the court that valuable judicial resources will not be wasted. *Beck v. Beck,* 771 S.W.2d 141, 142 (Tex.1989); *Baker v. Goldsmith,* 582 S.W.2d at 408.

We note, of course, that the United States Supreme Court has held that a showing of a meritorious defense is not necessary in the very limited situation where a defendant receives no notice, be it formal or actual, of the proceedings against him. *Peralta v. Heights Medical Ctr.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). If service is merely defective, as opposed to nonexistent, the bill of review plaintiff must still allege a meritorious defense. William R. Trail and Julia A. Beck, *Peralta v. Heights Medical Center, Inc.: A Void Judgment Is a Void Judgment Is a Void Judgment—Bill of Review and Procedural Due Process in Texas,* 40 Baylor L.Rev. 367, 380 (1988).

tions,[24] but it does not appear to apply in all respects to situations such as that presented in *Petro–Chemical* and the case at bar where there has been a trial on the merits.

■ According to the *Baker* opinion, a bill of review plaintiff must initially file a petition containing certain allegations. Among other things, the bill of review plaintiff must "allege, with particularity, sworn facts sufficient to constitute [a meritorious] defense." *Baker v. Goldsmith*, 582 S.W.2d at 408. Then the bill of review plaintiff must, "as a pretrial matter, present prima facie proof to support the contention." *Id.* In default judgment situations, a meritorious defense means a "defense to the cause of action alleged to support the judgment." *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 408 (Tex.1987). For example, in *Alexander v. Hagedorn*, Mr. Hagedorn's defense, which was found to be meritorious, was that he did not own the mule that caused the accident.

However, in a situation such as *Petro–Chemical* where there has been a trial on the merits but no subsequent notice of the judgment, a losing defendant has already had an opportunity to defend against the allegations contained in the plaintiff's petition. The defendant does not complain he was unable to present a defense to the plaintiff's cause of action. Rather, the defendant seeks relief by bill of review because he lost his chance to file a motion for new trial or his chance to appeal. In such a situation, a meritorious defense means "a meritorious ground of appeal." *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d at 245.

■ Because the case at bar presents the same type of situation as in *Petro–Chemical*, Hale and Goodnoh Trucking were required to allege, with particularity, sworn facts sufficient to constitute a meritorious ground of appeal. In their petition for bill of review, Hale and Goodnoh Trucking made the following sworn allegation:

The Defendants [Hale and Goodnoh Trucking] have a meritorious defense to

the judgment entered. These defenses are outlined in its Motion for New Trial. Generally, they are; [sic]

[1]. The Defendants are entitled to a new trial because the damages are manifestly too large.

[2]. The jury acted out of bias and prejudice.

[3]. Defendants seek a new trial in the interest of justice and fairness.

[4]. No evidence or insufficient evidence upon which to base the award of loss of earning capacity in the future.

[5]. There was no evidence and/or insufficient evidence that the Plaintiff had suffered physical impairment in the past.

[6]. There is no evidence and/or insufficient evidence that the Plaintiff will suffer physical impairment in the future.

[7]. There was no evidence and/or insufficient evidence that the Plaintiff would suffer physical pain and mental anguish in the future.

[8]. The juries [sic] finding of "No" to Question No. 1 was against the great weight and preponderance of the evidence.

[9]. The juries [sic] finding to Question No. 1 was supported by insufficient evidence and/or no evidence.

[10]. There was no evidence and/or insufficient evidence to support the juries [sic] finding that Johnny Goodnoh Trucking Company negligently entrusted the vehicle to Reginald Hale.

[11]. There was no evidence and/or insufficient evidence to support the juries [sic] finding that Johnny Goodnoh Trucking Company was grossly negligent.

Our immediate task is to determine whether any of the eleven defenses set forth above embody sworn facts sufficient to constitute a meritorious ground of appeal. At this point, we are confronted with the interesting question of exactly what constitutes a meritorious

---

**24.** *See Beck v. Beck*, 771 S.W.2d at 142 (a default judgment case wherein the *Baker* trial procedure was approved).

ground of appeal. Must the ground of appeal be one that presents a complete defense to the cause of action alleged to support the judgment (*e.g.*, "It's not my mule") or can it simply be a ground that calls for modification of a judgment as opposed to its reversal (*e.g.*, appellate point of error that requests a reduction in the amount of attorneys fees awarded to the victorious party but does not otherwise challenge the propriety of the judgment)? This is certainly a pertinent question since Hale and Goodnoh Trucking's first three "defenses" complain of the size of the damage award and, if valid, would only call for a modification of the judgment.[25]

In 1878, our Supreme Court was faced with a situation where a defendant had been unable to advance his appeal. The defendant sought relief by bill of review: The Supreme Court declared:

> It is not pretended that appellant was in any way hindered or obstructed in making his defense to the original action in the District Court. It is insisted merely that he did not get the benefit of his appeal to this court.... But, we ask, why should a court of equity interfere and grant relief unless there was merit in his appeal? Surely no one would claim relief because by accident or mistake he has lost the opportunity of appealing from the judgment of the District Court, if it appeared that his appeal was taken merely for delay; and if not, as it must be conceded, it is incumbent upon the party applying to a court of equity for relief to show equity. Appellant, when he appealed to equity for relief, because, as he says, he has lost the benefit of his appeal for want of a statement of facts, should show, *prima facie* at least, a meritorious ground of appeal; and that had the statement of facts been filed, so that he could have presented his appeal to this court as he designed, *the judgment might, and probably would have been reversed.*

*Overton v. Blum,* 50 Tex. 417, 425–26 (1878) (emphasis added). Nearly one hundred years after *Overton,* the Supreme Court recited the above quote and declared that "[w]e

adhere to the rule laid down in *Overton.*" *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 245–46.

The above quotation set forth originally in *Overton* and repeated in *Petro–Chemical* would seem to indicate that a meritorious ground of appeal is one that demands a reversal of the underlying judgment. But, admittedly, the question of whether a ground of appeal that merely calls for a modification of the judgment is "meritorious" for bill of review purposes was not at issue in either case.

Perhaps some light is shed on the question in a case out of this court styled *Payne v. General Motors Acceptance Corp.,* 420 S.W.2d 503 (Tex.Civ.App.—Amarillo 1967, no writ). While not a bill of review case, we find the case to be relevant. In *Payne,* one E.A. Payne was sued for the balance due under a conditional sales contract. The plaintiff pleaded Payne's default, sale of the collateral and balance due. Payne filed an answer but failed to appear on time for trial. A default judgment was rendered against him. Payne then filed a motion for new trial, contending he had "a meritorious defense to plaintiff's cause of action because the security of the conditional sales contract was or should have been worth the balance of the purchase price owed at the time the same was repossessed." *Id.* at 504.

This court determined that Payne's motion did not show a meritorious defense, declaring, "[t]he motion must allege facts which in law would constitute a defense to the cause of action asserted by the plaintiff...." *Id.* As recognized in a leading Texas law review, "[t]he theory upon which relief was denied was that the complaint as to the *amount* of the judgment did not allege a meritorious defense." John H. McElhaney, *Texas Civil Procedure,* 23 Sw.L.J. 177, 178 (1969). The author of the article called our holding "questionable," opining that a party entitled to equitable relief "is equally injured whether the label 'damages' or 'liability' is attached to the judgment." *Id.*

---

**25.** We interpret Hale and Goodnoh Trucking's Defense No. 2 and Defense No. 3 as piggyback- ing on their Defense No. 1 that the damages are manifestly too large.

A more recent opinion issued by this court is also instructive, although it seems to be at odds with *Payne*. In *Hartsfield v. Wisdom*, 843 S.W.2d 221 (Tex.App.—Amarillo 1992, writ denied), Russell Lynn Hartsfield filed a petition for bill of review to set aside an agreed decree of divorce. In an attempt to plead a meritorious defense, Hartsfield alleged that he was mentally incompetent at the time he entered into the agreed judgment. Hartsfield did not seek to have the decree of divorce set aside, however. Rather, Hartsfield sought to have the property settlement portion of the agreed judgment overturned. We determined that Hartsfield had failed to allege a meritorious defense, declaring:

> A mere allegation that the resisting party was incompetent during the pendency of the divorce proceeding is inadequate to show a meritorious defense to the contractual divorce agreement. This is because Hartsfield must also plead or show proof that he received an unfair settlement *and would obtain a more favorable property division on retrial* if his allegations were believed.

*Id.* at 224 (emphasis added).

As authority for the above statement, we cited *Martin v. Martin*, 840 S.W.2d 586 (Tex. App.—Tyler 1992, writ denied) and *DeCluitt v. DeCluitt*, 613 S.W.2d 777 (Tex.Civ.App.—Waco 1981, writ dism'd). Both were divorce cases. In *Martin*, the Tyler Court of Appeals declared that in order for a party to set aside a final judgment by bill of review he must prove three elements, including "a meritorious defense to the cause of action alleged to support the judgment, *or a meritorious claim.*" *Martin v. Martin*, 840 S.W.2d at 591 (emphasis added). The court relied on *Hagedorn* and *Hanks* as authority for its declaration. Neither of those cases, however, speak of "a meritorious claim." Rather, both cases state that the bill of review plaintiff must allege and prove "a meritorious defense to the cause of action alleged to support the judgment." *Hanks v. Rosser*, 378 S.W.2d at 34; *Alexander v. Hagedorn*,

226 S.W.2d at 998. The court of appeals continued to speak of a meritorious "claim" citing *Baker v. Goldsmith* and *Beck v. Beck*, 771 S.W.2d 141 (Tex.1989). Neither *Baker* nor *Beck* speak of a meritorious "claim."

Clearly, the Tyler Court of Appeals acted on its own accord in expanding the first traditional bill of review element to include a meritorious "claim." Such an expansion was necessary in order to allow the bill of review plaintiff in that case to meet the meritorious defense requirement for she had no defense to the agreed judgment of divorce itself. Rather, as the court of appeals found, the bill of review plaintiff presented prima facie proof of a meritorious claim by demonstrating "that she would obtain a more favorable property division on retrial." *Martin v. Martin*, 840 S.W.2d at 592.

*DeCluitt v. DeCluitt*, the other case on which we relied for our holding in *Hartsfield*, does not speak of a meritorious claim. But that opinion implies that a meritorious defense would be shown where a bill of review plaintiff can show a likelihood of receiving a "greater recovery" on retrial than was received in the original action. *See DeCluitt v. DeCluitt*, 613 S.W.2d at 781.

As can be seen from our analysis of the *Martin* and *DeCluitt* decisions, our holding in *Hartsfield* (that a bill of review plaintiff alleges a meritorious defense by pleading he would obtain a more favorable property division on retrial) is not built upon the most solid of foundations. There simply is no Supreme Court authority for such a holding.[26] This is not to say that our holding in *Hartsfield* was wrong, however.

Upon review of the several cases touching the question of whether a ground of appeal that merely calls for a modification of a judgment is meritorious for bill of review purposes, we conclude that such a ground is indeed meritorious. A bill of review is, after all, an equitable proceeding and it occurs to us that there is nothing equitable about precluding a party from challenging the amount of a judgment against it where such party was denied the right to make such a chal-

---

**26.** There is other appellate court authority. *See Kessler v. Kessler*, 693 S.W.2d 522, 524–25 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.).

lenge by motion for new trial or appeal. We therefore hold that a meritorious ground of appeal means a meritorious claim, whether that claim be a meritorious defense to the cause of action alleged to support the judgment or merely a meritorious basis for modification of the judgment in some respect. In the case at bar, Hale and Goodnoh Trucking's allegation that the damages awarded by the jury to McDaniel are manifestly too large constitutes an allegation of a meritorious ground of appeal.

We need not reach the very interesting question of whether the remainder of Hale and Goodnoh Trucking's defenses embody facts sufficient to constitute meritorious grounds of appeal.[27] *Baker v. Goldsmith* requires the bill of review plaintiff to do more than simply allege a meritorious defense or meritorious ground of appeal. As noted earlier, the bill of review plaintiff must, "as a pretrial matter, present prima facie proof to support the contention." *Baker v. Goldsmith,* 582 S.W.2d at 408. In the present case, while Hale and Goodnoh Trucking alleged legal and factual insufficiency points in their bill of review petition, nothing in the record shows that Hale and Goodnoh produced any proof in support of those contentions. Indeed, the only mention of a merito-rious ground of appeal in the bill of review proceedings is that the damages awarded were too large. Similarly, the only meritorious ground of appeal mentioned in Hale and Goodnoh Trucking's two appellate briefs is that the damages awarded were too large. Hale and Goodnoh Trucking have not presented any proof whatsoever in support of their legal and factual insufficiency questions. Accordingly, the question of whether the insufficiency allegations themselves constitute meritorious grounds of appeal is immaterial.

▆▆▆▆ Having determined the excessiveness-of-the-damages allegation to be the only meritorious ground of appeal upon which Hale and Goodnoh Trucking may now rely, we move on to a discussion of whether Hale and Goodnoh Trucking presented prima facie proof to support their contention. According to the Supreme Court's *Baker v. Goldsmith* decision, "a prima facie defense is made out when it is determined that the complainant's defense is not barred as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered." *Id.* at 409. While this standard makes perfect sense in the typical default judgment situation, it is difficult to apply in situations where there has been a trial on the merits.[28] In a case very similar

---

27. The remaining defenses are all legal and factual insufficiency points. Can such defenses be considered meritorious grounds of appeal? For example, there is no question that in the *Alexander v. Hagedorn* default judgment situation, Mr. Hagedorn's allegation in his petition for bill of review that he did not own the mule that caused the accident constituted a meritorious defense. But, what if Mr. Hagedorn had gone through a trial on the merits and the jury determined that he did indeed own the mule? If, as in *Petro-Chemical,* Hagedorn had been prevented from challenging that determination by motion for new trial or appeal, would Hagedorn have a meritorious ground of appeal in claiming that the evidence was legally and factually insufficient to support the jury's finding that he owned the mule?

As we see it, the potential problem with such a defense is not in alleging it but rather in presenting prima facie proof to support the contention as required by *Baker v. Goldsmith.* Thankfully, this is a question for another day and time.

28. For example, in *Earp v. Earp,* 688 S.W.2d 245 (Tex.App.—Fort Worth 1985, no writ), the Fort Worth Court of Appeals attempted to apply the standard in a divorce case where both parties had participated at trial. After setting forth the *Baker v. Goldsmith* standard, the court wrote:

> In point of error one, appellant contends that the trial court erred in overruling her motion for new trial because appellant presented prima facie proof of a meritorious defense to the cause of action alleged to support the divorce judgment. It appears from appellant's brief that this prima facie defense is that the division of property, pursuant to the final decree of divorce is unequal inasmuch as she only received 37% of the community property while her ex-husband received 63%. In support of this contention, appellant states that her original pleadings and proof, offered at the original divorce trial as well as at the pretrial hearing on her petition for bill of review, coupled with the absence of any evidence in the original divorce trial warranting an unequal property division, constitute prima facie proof of a meritorious defense.
>
> We find that appellant is basically contending that the trial court abused its discretion in its division of the parties' community property. Abuse of discretion is not a proper subject for a bill of review.

*Earp v. Earp,* 688 S.W.2d at 247–48.

to the one at bar,[29] our sister court of appeals in El Paso set forth the following standard a bill of review plaintiff must meet in order to show a meritorious ground of appeal:

> [T]he applicant for a bill of review must set out in his petition with some particularity the errors he claims were committed against him in the trial and disposition of the original suit; he must then introduce the transcript and the statement of facts from the original suit, if needed in consideration of the alleged errors; and finally, he must establish that if his appeal had been preserved judgment might and probably would have been reversed.

*Rohdie v. Washington,* 641 S.W.2d 317, 319 (Tex.App.—El Paso 1982, writ ref'd n.r.e.). The *Rohdie* opinion does not mention the term "prima facie" but the standard set forth above appears to call for only a prima facie showing of a meritorious defense.[30] Thus, the *Rohdie* standard does not contravene the principle established in *Baker v. Goldsmith* that "the complainant in a bill of review is not required to prove his meritorious defense by a preponderance of the evidence." *Baker v. Goldsmith,* 582 S.W.2d at 408.[31]

According to the teachings of *Baker v. Goldsmith,* the question of whether a bill of review plaintiff has made out a prima facie meritorious defense is to be taken up at a pretrial hearing. *Id.*[32] It is a question of law for the court. *Id.* The only relevant inquiry at this hearing is whether the bill of review plaintiff has presented prima facie proof of a meritorious defense. *Id.; State v. Buentello,* 800 S.W.2d 320, 325 (Tex.App.—Corpus Christi 1990, no writ). As noted in *Baker,*

> Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion. The bill of review defendant may respond with like proof showing that the defense is barred as a matter of law, but factual questions arising out of factual disputes are resolved in favor of the complainant for the purposes of this pretrial, legal determination. If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case.
>
> On the other hand, if a prima facie meritorious defense has been shown, the court will conduct a trial.

*Baker v. Goldsmith,* 582 S.W.2d at 409.

In this case, the record does not reveal that any pretrial hearing was conducted.

---

29. The case involved a bill of review proceeding following a trial on the merits.

30. The court of appeals statement that the bill of review plaintiff "must establish that if his appeal had been preserved judgment *might and probably would have been* reversed," indicates that the court is adhering to the requirement that only a prima facie meritorious defense need be shown. As stated by the Supreme Court in *Petro–Chemical,* a meritorious ground of appeal is one which, had it been presented to the appellate court as designed, "might, and probably would have" caused the judgment to be reversed. *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 245.

31. The case of *Thomason v. Freberg,* 588 S.W.2d 821 (Tex.Civ.App.—Corpus Christi 1979, no writ), involved a bill of review following a trial on the merits. In that case, the following standard was enunciated:

> [S]ince [appellant] lost the benefit of a motion for new trial and/or appeal in the previous cause, ... his burden at the bill of review hearing regarding a meritorious defense was to introduce the statement of facts, exhibits and transcript from the prior suit and point out errors which would have justified a reversal in the prior suit had the movant had an opportunity to file a motion for new trial and/or a direct appeal.

*Id.* at 826. Under this standard, the bill of review plaintiff is required to "point out errors which *would* have justified a reversal in the prior suit." In keeping with the *Baker v. Goldsmith* instruction that only a prima facie meritorious defense need be shown, the standard should require the bill of review plaintiff to point out errors which *might and probably would have* justified a reversal in the prior suit.

32. Speaking of the procedure it outlined in *Baker,* the Supreme Court has said:

> In order to assure that valuable court time is not wasted by conducting a spurious "full-blown" examination of the merits, we directed that the petitioner be required to present prima facie proof of a meritorious defense as a pretrial matter. After a prima facie showing, the trial court then conducts a trial on the remaining elements.

*Beck v. Beck,* 771 S.W.2d at 142. *See also Arndt v. Arndt,* 714 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1986, no writ).

Contrary to the dictates of the Supreme Court, the trial court did not require Hale and Goodnoh Trucking to "present prima facie proof of a meritorious defense as a *pretrial* matter." *See Beck v. Beck,* 771 S.W.2d at 142 (emphasis added). Rather, a jury trial was conducted at which Hale and Goodnoh Trucking attempted to prove all the necessary elements of their bill of review, including a meritorious ground of appeal. This clearly was not proper procedure.

Consistent with proper bill of review procedure, the jury was not questioned as to whether Hale and Goodnoh Trucking had shown a meritorious ground of appeal.[33] Rather, the trial court made a finding in regard to the meritorious ground of appeal question. In its judgment, the trial court stated:

> The Court finds that the damages awarded by the jury in Cause No. 7537 were excessive. The Court further finds that a new trial should be granted in the interests of justice.

Neither McDaniel nor Hale and Goodnoh Trucking have made mention in their briefs of the fact that there was no pretrial hearing on the meritorious ground of appeal issue. Apparently, the parties did not find the lack of such a hearing to be particularly significant. In our view, however, the absence of a pretrial hearing is of some concern.

One could read the *Baker* opinion as being a directive rather than a mere suggestion on how a bill of review should be conducted. In *Baker,* the court declared that a bill of review plaintiff *"must* ... as a pretrial matter, present prima facie proof to support the [meritorious defense] contention." *Baker v. Goldsmith,* 582 S.W.2d at 408 (emphasis added). This language has been repeated in *State v. Buentello,* 800 S.W.2d at 325.

On the other hand, one might conclude that the *Baker* opinion simply offers a suggestion as to how a bill of review should proceed. In the case of *Beck v. Beck,* the Supreme Court referred to the procedure set forth in *Baker* as a "suggested procedure." *Beck v. Beck,* 771 S.W.2d at 142. Later in

that opinion, the court referred to "the pretrial hearing *authorized* by *Baker v. Goldsmith." Id.* (emphasis added). In *Arndt v. Arndt,* 714 S.W.2d 86 (Tex.App.—Houston [14th Dist.] 1986, no writ), the court of appeals stated that "[b]efore conducting a full trial on the bill of review, a court *may* conduct a hearing at which the complainant is to present prima facie proof to support his contended defense." *Id.* at 88 (emphasis added).

This court has recently written on bill of review procedure in *K.B. Video & Electronics v. Naylor,* 847 S.W.2d 401 (Tex.App.—Amarillo 1993, writ denied). In that case, we noted that the question of a meritorious defense is a "pretrial legal determination." *Id.* at 405. We went on to say:

> If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case. If a prima facie defense is shown, the court then conducts a trial.

*Id* at 405–06 (citations omitted). Clearly, we presumed that the question of a meritorious defense is the threshold inquiry.

Based on the authorities set forth above, we can readily say that proper bill of review procedure calls for a pretrial hearing on the meritorious defense element. However, we cannot say with any degree of certainty that the failure to show a prima facie meritorious defense *at a pretrial hearing* is fatal to a bill of review plaintiff. Accordingly, while the absence of a pretrial hearing on the question of a meritorious defense is troubling, we find that Hale and Goodnoh Trucking's failure to show a prima facie meritorious defense as a pretrial matter does not defeat their attempt to obtain relief by bill of review.

We now move on to a discussion of whether Hale and Goodnoh Trucking carried their burden of showing a prima facie meritorious ground of appeal at the bill of review trial. McDaniel contends that in order for Hale and Goodnoh Trucking to sustain their burden of demonstrating that the judgment might and probably would have been reversed, *see Rohdie v. Washington,* 641

---

**33.** The question of whether a bill of review plaintiff has made out a prima facie meritorious de-

fense is a question of law for the court. *Baker v. Goldsmith,* 582 S.W.2d at 409.

S.W.2d at 319, they were required to introduce the statement of facts from the underlying lawsuit in the bill of review proceeding. Case authority exists in support of McDaniel's contention.

In *Petro–Chemical,* the Supreme Court said:

The applicant should set out in his petition with some particularity the errors he claims were committed against him in the trial and disposition of the original suit. He should also introduce the transcript, and the statement of facts where needed in the consideration of the alleged errors, in the original suit.

*Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 246. At least three courts of appeals have followed *Petro–Chemical. See Wadkins v. Diversified Contractors, Inc.,* 734 S.W.2d 142, 143 (Tex.App.—Houston 1987, no writ) ("It is the appellant's duty to introduce the transcript and statement of facts in the original suit if the appellate court needs them in order to review the bill of review record."); *Rohdie v. Washington,* 641 S.W.2d at 319 (bill of review plaintiff "must ... introduce the transcript and the statement of facts from the original suit, if needed in consideration of his alleged errors"); *Thomason v. Freberg,* 588 S.W.2d at 826 (movant's "burden at the bill of review hearing regarding a meritorious defense was to introduce the statement of facts, exhibits and transcript from the prior suit and point out errors which would have justified a reversal in the prior suit had the movant had an opportunity to file a motion for new trial and/or a direct appeal").

At the time of the bill of review trial, the statement of facts from the underlying trial had not yet been transcribed.[34] Irrespective of that fact, Hale and Goodnoh Trucking moved for admission of the statement of facts into evidence. The record reveals the following exchange between the attorney for Hale and Goodnoh Trucking (Mr. Bird) and the attorney for McDaniel (Mr. Altman).

Mr. Bird: At this time, we'd like to offer into evidence the transcript, the record in Case Number 7537/7633, the two consolidated cases together with the Statement of Facts that has not been completed by the reporter in the case.

(Whereupon an instrument was marked as Plaintiff's Exhibit Number 9 for identification.)

Mr. Altman: Your Honor, if I might make an objection for purposes of the record that the transcript and the Statement of Facts goes to a legal matter for the Court to decide and not an issue that the jury needs to decide in this case.

Mr. Bird: We need to get it into evidence.

Mr. Altman: If you're offering it for the benefit of the Court, I don't have any objection to the Jury seeing everything. I simply don't think it's a matter that [the] Jury is going to have to decide.[35]

The Court: That's right. I understood he was introducing it just for purposes of the record.

Mr. Bird: Well, just for the purpose of the record.

The Court: It is admitted, yes.

The statement of facts was again discussed just prior to the time that Hale and Goodnoh Trucking rested their case. We have reproduced that exchange below:

Mr. Bird: We did get—The Court did admit into evidence for the record purposes the transcript and the statement of facts?

The Court: Yes.

Mr. Bird: We rest, Your Honor.

Mr. Altman: Let me see the statement of facts up there.

Mr. Bird: No, Russell hasn't completed it yet.

Mr. Altman: Your Honor, I probably won't have an objection but, technically, I want to make an objection to the introduction

---

34. The bill of review trial was conducted on August 14, 1989. The statement of facts was not transcribed until June 24, 1993. The statement of facts is part of the appellate record.

35. This statement clearly shows that the legal question of whether the bill of review plaintiffs could show a prima facie meritorious ground of appeal was considered along with the other necessary bill of review elements in the bill of review trial.

of an exhibit that is not here until I have a chance to look at it. On that basis, I object to the entering of the exhibit or the acceptance until we actually have it. Did you rest?

Mr. Bird: Yes.

Mr. Altman: Your Honor, the defendant rests.[36]

The result of these exchanges is that the yet-to-be transcribed statement of facts was admitted into evidence for purposes of the record—that is to say, the appellate record. Clearly, the trial court did not have the statement of facts before it to use in determining the meritorious ground of appeal issue.

Hale and Goodnoh Trucking contend that McDaniel's argument that the statement of facts had to be introduced in the bill of review proceeding is incorrect for three reasons: (1) McDaniel has waived his right to complain about the absence of the statement of facts; (2) The trial court was authorized to order a new trial if it would have done so in the underlying case and the trial court need not have a statement of facts to order a new trial; and (3) a statement of facts was unnecessary because the trial court could properly take judicial notice of the underlying trial. We will address each of these three contentions in order.

■■■ Hale and Goodnoh Trucking correctly note that at the time the statement of facts was admitted into evidence, McDaniel did not object on the ground that it had not yet been completed. Hale and Goodnoh Trucking thus conclude that McDaniel has waived his right to complain of the absence of a statement of facts at the bill of review trial. We disagree.

McDaniel's complaint on appeal is not that the statement of facts was admitted before it was transcribed. Rather, McDaniel's point is that the trial court did not have the benefit of a transcribed statement of facts in making its legal determination of the meritorious ground of appeal issue. McDaniel was not required to make any objection to the admission of the yet-to-be-transcribed statement of facts in order to preserve his argument.

■■■ As to their second contention, Hale and Goodnoh Trucking begin with the premise that they were deprived not only of the chance to appeal but also of the "right to have their motion for new trial considered." Hale and Goodnoh Trucking have chosen their words carefully. It is no accident that they claim deprivation of the "right to have their motion for new trial considered" rather than the loss of a chance to file a motion for new trial. In this case, Hale and Goodnoh Trucking did timely file a motion for new trial. As mentioned earlier in this opinion, Hale and Goodnoh Trucking filed their motion for new trial at a time when they knew the judgment had not yet been signed.[37] The trial court signed the judgment one week after the new trial motion was filed and the signed judgment was filed with the district clerk the same day. However, contrary to the trial judge's usual practice, no notation of the signing of the judgment was made in the judge's docket book. As the record reveals, the trial judge was unaware he had signed the judgment and that the motion for new trial was ripe for action.[38]

We are thus presented with a situation unlike that in *Hanks v. Rosser* and *Baker v. Goldsmith* where the bill of review plaintiff was prevented from filing a motion for new trial by an official mistake of a court functionary. Here, bill of review plaintiffs Hale and Goodnoh Trucking were not prevented from filing a motion for new trial; a motion for new trial was timely filed. Rather, in this case the timely-filed new trial motion was not considered by the trial judge. And the judge's failure to consider the new trial motion was not the result of the court clerk's failure to apprise Hale and Goodnoh Truck-

36. As can be seen from this exchange, no ruling was made on Mr. Altman's "technical" objection.

37. *See* footnote 2.

38. The judgment was signed on June 23, 1988. On December 19, 1988, the trial judge sent a letter to the attorneys for all parties notifying them that a hearing on McDaniel's motion for judgment and Hale and Goodnoh Trucking's motion for new trial was set for January 3, 1989. Clearly, the judge would not have sent the letter if he knew the judgment had been signed.

ing that the judgment had been signed.[39] Consequently, we cannot accept Hale and Goodnoh Trucking's basic premise that they were deprived of the right to have their motion for new trial considered by virtue of an official mistake by the court clerk. Consequently, Hale and Goodnoh's second contention fails.

■ Even if, *arguendo*, we were to accept Hale and Goodnoh Trucking's premise that they were deprived of the right to have their motion for new trial considered, we would find Hale and Goodnoh Trucking's second contention to be unavailing. To succeed upon their bill of review, Hale and Goodnoh Trucking were required to show prima facie proof of a meritorious ground of appeal. This means a claim that would likely be a successful point of error at the court of appeals. When a trial court conducts a bill of review, it is to make a legal determination as to whether the alleged meritorious ground of appeal would likely succeed at the court of appeals. Consequently, the trial court must use appellate standards of review in making that determination.

This is the case even where the right lost is that of advancing a motion for new trial. The trial court is not to use the standards it usually uses in determining whether a new trial motion should be granted. Rather, the trial court is to use appellate standards of review in determining whether a meritorious ground of appeal exists.

Hale and Goodnoh Trucking argue that the trial court should be able to use the same discretion it usually uses when acting on motions for new trial. This would restore Hale and Goodnoh Trucking to the same position they would have been in had they been able to advance their motion for new trial. Thus, Hale and Goodnoh Trucking contend that the trial court should simply have been able to use its discretion in the bill of review proceeding and determine that a

new trial should be granted because the damages were manifestly too large. *See* Tex. R.Civ.P. 320 ("New trials may be granted when the damages are manifestly too small or too large."). We disagree.

As noted in our discussion of *Petro–Chemical,* the bill of review plaintiff in *Petro–Chemical* was not put in exactly the same position it would have been in had it received notice of the judgment against it. Here, we are operating under the rules laid down in *Petro–Chemical.* Equity does not require that the bill of review plaintiff be put in exactly the same situation he would have been in but for the mistake of a court official. The relevant case law allows for a final judgment to be set aside upon a bill of review where the bill of review plaintiff makes a prima facie showing of a meritorious ground of appeal. Appellate standards of review apply.[40] Accordingly, we do not agree with Hale and Goodnoh Trucking's contention that the trial court was authorized to use the bill of review proceeding to order a new trial if the court would have ordered a new trial upon consideration of Hale and Goodnoh Trucking's new trial motion. Rather, the trial court was authorized to order a new trial only upon satisfaction of the elements required to be shown in *Petro–Chemical*— one of which is a meritorious ground of appeal. Thus, even if the premise undergirding Hale and Goodnoh Trucking's second contention were sound, the contention is one to which we could not subscribe.

■ Hale and Goodnoh Trucking's third contention is that the introduction of the statement of facts was unnecessary because the trial court could take judicial notice of the underlying trial. Since the trial judge in the bill of review trial was the same judge as in the underlying trial, Hale and Goodnoh Trucking argue that the judge did not need a statement of facts in determining whether

---

**39.** In one of their appellate briefs, Hale and Goodnoh Trucking state that "the trial court and jury determined that Hale and Goodnoh [Trucking] lost their right to urge their motion for new trial because of the district clerk's failure to send notice." Our review of the jury's answers and the trial court's Order Granting Bill of Review reveals that no such determination was made.

**40.** In determining whether damages are excessive, courts of appeals are to apply a factual sufficiency test. *Hughes v. Thrash,* 832 S.W.2d 779, 786 (Tex.App.—Houston [1st Dist.] 1992, no writ); *see also Pope v. Moore,* 711 S.W.2d 622, 623–24 (Tex.1986).

their ground of appeal was meritorious. The case of *Davis v. Donalson*, 91 S.W.2d 763, 765 (Tex.Civ.App.—Dallas 1936, writ dism'd) supports Hale and Goodnoh Trucking's view. In *Davis*, the court of appeals stated that "trial courts are authorized in suits of this nature [bill of review suits] to take judicial knowledge of the original cause and the record and prior proceedings in the same suit." *Id.* at 765. *See also Dixon v. McNabb*, 173 S.W.2d 228, 229 (Tex.Civ.App.—Dallas 1943, writ ref'd). Hale and Goodnoh Trucking also point out that in *Wadkins v. Diversified Contractors, Inc.*, the court of appeals stated that the bill of review plaintiff has a duty to introduce the statement of facts "*if* the appellate court needs them in order to review the bill of review record." *Wadkins v. Diversified Contractors, Inc.*, 734 S.W.2d at 143 (emphasis added).

We agree with Hale and Goodnoh Trucking that the trial court could take judicial notice of the underlying trial. The requirement that a statement of facts be introduced appears to be primarily for the benefit of the appellate court. We note that three of the four cases cited by McDaniel as support for his contention that introduction of the statement of facts is necessary declare that the statement of facts should be introduced *if needed*. *See Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d at 246 (statement of facts should be introduced "where needed" in consideration of the alleged errors); *Wadkins v. Diversified Contractors, Inc.*, 734 S.W.2d at 143; *Rohdie v. Washington*, 641 S.W.2d at 319 (statement of facts must be introduced "if needed" in consideration of alleged errors). We conclude that where the judge trying the bill of review case is the same judge that tried the underlying case, that judge is entitled to take judicial notice of the original case in making the legal determination as to whether the bill of review plaintiff has shown a prima facie meritorious defense.[41] It is not necessary that a tran-

scribed statement of facts be introduced for the trial judge to make such a determination.

■ Having determined that the trial court was entitled to take judicial notice of the first trial we must now consider whether the trial court actually did take judicial notice. McDaniel correctly points out that there is no indication in the record that the trial court ever took such notice. Hale and Goodnoh Trucking have made no argument in response to this point.

■ A court may take judicial notice sua sponte. Tex.R.Civ.Evid. 201(c). At some point in the proceedings, however, the court must notify the parties it has done so because Tex.R.Civ.Evid. 201(e) guarantees the parties an opportunity to be heard as to the propriety of taking judicial notice. Olin Guy Wellborn III, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 St. Mary's L.J. 1, 19 (1987). Due process may also require that the parties be given a hearing. *Id.*; Murl A. Larkin, *Article II: Judicial Notice*, 20 Hous.L.Rev. 107, 120 (1983) ("The United States Supreme Court has suggested that due process is violated when judicial notice is taken of a fact and the party against whom the fact operates is not given an opportunity to challenge it."); *see Garner v. Louisiana*, 368 U.S. 157, 173–74, 82 S.Ct. 248, 256–257, 7 L.Ed.2d 207, 219 (1961); *Ohio Bell Tel. Co. v. Public Utils. Comm'n*, 301 U.S. 292, 302–03, 57 S.Ct. 724, 729–30, 81 L.Ed. 1093, 1100–01 (1937).

■ As an appellate court, we are entitled to take judicial notice of a proper fact even where a trial court was not requested to take judicial notice of the fact and the court made no announcement that it had taken such notice. *Harper v. Killion*, 162 Tex. 481, 348 S.W.2d 521, 523 (1961); *Continental Oil Co. v. Simpson*, 604 S.W.2d 530, 535 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Cf.* Tex.R.Civ.Evid. 201(f) ("Judicial notice

---

41. We acknowledge the case of *Levit v. Adams*, 841 S.W.2d 478, 484 (Tex.App.—Houston [1st Dist.] 1992), *reversed on other grounds*, 850 S.W.2d 469 (Tex.1993), wherein it was held that "personal knowledge is not judicial knowledge," and that "a judge may personally know a fact of which she may not properly take judicial notice." But in *Levit*, the judicially noticed facts were

disputed by the parties and because the proceedings had not been recorded by a court reporter the court of appeals had no record from which to determine the accuracy of the judicially noticed facts. We do not believe *Levit* demands the conclusion that the trial court could not take judicial notice of the underlying trial in the bill of review trial at issue here.

may be taken at any stage of the proceeding."). Additionally, it has been held that an appellate court may presume that a trial court supported its judgment by taking judicial notice of certain commonly known, easily ascertainable and indisputable facts. *See Buckaloo Trucking Co. v. Johnson,* 409 S.W.2d 911, 913 (Tex.Civ.App.—Corpus Christi 1966, no writ); *Harper v. Killion,* 345 S.W.2d 309, 312 (Tex.Civ.App.—Texarkana 1961, *aff'd,* 162 Tex. 481, 348 S.W.2d 521 (1961) (appellate court "presumed that the trial court in support of his judgment, took judicial notice of the commonly known, easily ascertainable and undisputable fact that Jacksonville, Texas, is located in Cherokee County, Texas.").

Here, however, we cannot presume the trial court took judicial notice of the events of the underlying trial. This kind of a presumption is entirely different from a presumption that a trial court took judicial notice that a certain city is located in a certain county. It was incumbent upon Hale and Goodnoh Trucking to ensure that the record showed the trial court took judicial notice of the underlying trial if they expected to claim on appeal that the trial court did take such notice. We can only presume that the trial court did not take judicial notice of the events of the underlying trial. Thus, while the trial court could have taken judicial notice of the events of the trial on the merits, the fact is that it did not do so. Hale and Goodnoh Trucking's argument that a statement of facts did not have to be introduced in the bill of review proceeding because the trial court could take judicial notice of the underlying trial is unavailing.

We accept McDaniel's argument that the statement of facts must be introduced in the bill of review proceeding. Because such a statement of facts was not introduced, we find that Hale and Goodnoh Trucking failed to carry their burden of showing a prima facie meritorious ground of appeal at the bill of review trial. Without a statement of facts, Hale and Goodnoh Trucking were unable to sustain their burden of showing that the original judgment might and probably would have been reversed. Because Hale and Goodnoh Trucking were not able to show a

meritorious ground of appeal, their petition for bill of review should not have been granted.

■ Even if, *arguendo,* Hale and Goodnoh Trucking had introduced a transcribed statement of facts at the bill of review trial, we would be unable to conclude they had shown a prima facie meritorious ground of appeal. As mentioned in footnote 41, in determining whether damages are excessive, courts of appeals are to apply a factual sufficiency test. Because McDaniel had the burden of proving damages, Hale and Goodnoh Trucking's factual sufficiency argument takes the form of an "insufficient evidence point." *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied). In reviewing an insufficient evidence point, an appellate court is to examine the entire record to determine if there is some probative evidence to support the finding, and, if there is, the court must then determine whether the evidence supporting the finding is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 276. This appellate standard is the test the trial court was bound to employ in determining whether the factual insufficiency point was one that might and probably would have been sustained on appeal.

In their first appellate brief, Hale and Goodnoh Trucking advance the following argument in an effort to show the damage award was excessive:

A review of the record shows that the trial court's determinations regarding the excessiveness of damages and the need for a new trial were correct. The evidence established that McDaniel incurred medical bills in the amount of $7,068.00; that McDaniel was off work for approximately six (6) months following the accident from June of 1983 until January of 1984; and that from January of 1984 until the time of the first trial, McDaniel consistently worked at jobs requiring hard labor, as he did prior to the accident. The evidence further established that, after returning to work in January of 1984, McDaniel did not seek any medical attention for two years,

until just prior to the date his doctor was scheduled to give his deposition. Faced with this evidence, the jury awarded actual damages in the amount of $82,068.00.

We do not believe this argument to be one that might and probably would be accepted on appeal. In the first place, the very fact that McDaniel incurred over $7,000 in medical bills and was off from work for approximately six months after the accident constitutes some evidence to support the jury's finding of $82,068 in actual damages. Secondly, the jury awarded McDaniel $25,000 for physical pain and mental anguish.[42] The jury also awarded McDaniel $25,000 for loss of earning capacity.[43] Additionally, the jury awarded McDaniel $25,000 for physical impairment.[44] Finally, the jury awarded $7,068 for medical expenses in the past. The evidence supporting the jury's damage award cannot be said to be so weak as to be clearly wrong and manifestly unjust. Hale and Goodnoh Trucking's contention that the evidence was factually insufficient to support the jury's award of actual damages is simply not a contention that might and probably would have been accepted on appeal.

We note that at the bill of review trial, Hale and Goodnoh Trucking made much of the fact that McDaniel's attorney had offered to settle the case for $45,000. Hale and Goodnoh Trucking argued that since the total judgment award of $332,068 was far in excess of the $45,000 amount, the jury verdict must necessarily be excessive. We disagree. The fact that $45,000 was once offered to settle the case does not change our conclusion that there is factually sufficient evidence to support the jury's actual damage award.

Hale and Goodnoh Trucking did not carry their burden of showing a meritorious defense.[45] Accordingly, the trial court erred in granting Hale and Goodnoh Trucking's petition for bill of review. Because our conclusion that Hale and Goodnoh Trucking failed to show a meritorious defense is dispositive of this appeal, we need not address whether Hale and Goodnoh Trucking met the other bill of review requirements.

## IV. SUMMARY

Our holding that Hale and Goodnoh Trucking failed to discharge their burden of showing prima facie proof of a meritorious defense requires us to reverse the order of the trial court granting the bill of review as well as the court's judgment in the second trial. We render judgment denying the petition for bill of review. *See Parker v. Gant,* 568 S.W.2d at 166. As a result, the original judgment of June 23, 1988 awarding McDaniel $82,068 in actual damages and $250,000 in exemplary damages remains in full force and effect.

Concurring Opinion by REYNOLDS, C.J.

REYNOLDS, Chief Justice, concurring.

I join in the court's judgment of reversal and reinstatement. Because I do not embrace some of the expressions and analyses in the lead opinion, I substitute these comments.

The resolution of the appeal, though arising from proceedings which departed from accepted bill of review principles, is governed by well established principles of law. In light of the extensive background contained in the lead opinion, it suffices to state that appellees, who fully participated in the original trial, filed a prejudgment motion for new trial which was overruled by operation of law after the judgment was signed without notice to them. They predicated their bill of review upon the failure of the court clerk to send the required notice of the signing of the final judgment. *See* Tex.R.Civ.P. 306a(3). Then, they were required to show the loss of an opportunity to appeal and, at least *prima facie*, a meritorious ground of appeal, *i.e.,*

42. $12,500 was awarded for physical pain and mental anguish in the past and $12,500 was awarded for physical pain and mental anguish in the future.

43. $12,500 for loss of earning capacity in the past and $12,500 for loss of earning capacity in the future.

44. $12,500 for physical impairment in the past and $12,500 for physical impairment that, in reasonable probability, McDaniel would suffer in the future.

45. We specifically sustain point of error three.

that the judgment might, and probably would, have been reversed, and that their failure to appeal was not due to any fault or negligence on their or their attorney's part. *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d 240, 245–46 (Tex.1974).

In permitting a trial on appellees' bill of review, the trial judge, who presided at the original trial, made a pretrial finding that the damages awarded by the jury were excessive. Appellant did not object to the absence of pretrial *prima facie* proof of a meritorious ground of appeal, and that issue is not before us. Tex.R.App.P. 52(a).

In the bill of review trial, the jury failed to find that the failure of appellees to urge their motion for new trial was not due to any fault or negligence on the part of them or their attorney. The trial court disregarded the answer, implicitly finding that the jury's answer had no support in the evidence or that the inquiry was immaterial. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966). There is no contention that the inquiry was immaterial and, by force of its bill of review judgment, the trial court found the absence of fault or negligence as a matter of law. The court's finding is correct, appellees submit, because they established the absence of negligence as a matter of law.

The evidence shows the proposed judgment was submitted to the trial judge with the request that it be signed by a certain date unless there was an objection, and a copy of the submission was sent to appellees' attorney. Appellees filed their motion for new trial later the same day. In response to the requested signing of the judgment, appellees' attorney asked the trial judge to postpone signing the judgment until he could hear the motion for new trial; and the judge, who had not received the proposed judgment nor knew of the requested signing, said the motions for new trial and judgment would be heard at the same time. Appellees' attorney made no objection to the judgment, and the judge signed it two days after the date it was requested to be signed. The district clerk did not notify either appellees or their attorney that the judgment had been signed.

Although not objecting to the proposed judgment, appellees' attorney did not evidence that he made any effort to determine whether the judgment had been signed on or after the date of its requested signing. Testimony on the question whether it was customary or reasonable for an attorney to check with the clerk to determine the status of pending motions was conflicting. Appellees' attorney and two other attorneys, one of whom was his partner at the time of the lawsuit and the other one of whom was employed as local counsel, concluded that appellees' attorney was not negligent. There was testimony that appellant's attorney had no duty to notify appellees' counsel of the signing of the judgment. A former Supreme Court justice, who had served as a district judge, being given a hypothetical situation embracing the submission of the proposed judgment and motion for new trial, expressed the opinion that he would have signed the judgment if he received no objection, and he would have expected the opposing attorney to expect that the judgment would be signed. The justice was not otherwise asked to express an opinion about the conduct of any attorney under the exact facts revealed by the testimony.

Then, under this record, a fact issue as to fault or negligence was presented, *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 246, and the court was not authorized to disregard the jury's answer. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273, 274 (1958). Restored, the jury's answer constituted a verdict for appellant unless the cross-point of appellees, by which they challenge the factual sufficiency of the evidence to support the answer, is sustained. *Id.* 314 S.W.2d at 276–77.

In according the jury its proper role to judge the credibility of the witnesses and the weight to be given to their testimony, I cannot say that the jury's refusal to find appellees' failure to urge its motion for new trial was not due to any fault or negligence of them or their attorney is against the great weight and preponderance of the evidence. Consequently, I would agree with appellant that appellees have failed to satisfy this requirement for a bill of review.

Moreover, it is settled that the final judgment should not be disturbed unless appellees could show that the judgment might, and probably would, have been reversed had they not lost the opportunity to appeal. *Petro–Chemical Transport, Inc. v. Carroll,* 514 S.W.2d at 245–46. The burden remained with appellees although, as earlier noticed, there was no objection to the pretrial finding of excessive damages by the trial judge, who presided at the first trial, and particularly there was no objection that the judge did not then have for review the statement of facts, which has been furnished as a part of the appellate record. In an attempt to validate the judge's finding, appellees' verbatim statement, with their references to the record eliminated, is:

> The evidence established that McDaniel incurred medical bills in the amount of $7,068.00; that McDaniel was off work for approximately six (6) months following the accident from June of 1983 until January of 1984; and that from January 1984 until the time of the first trial, McDaniel consistently worked at jobs requiring hard labor, as he did prior to the accident. The evidence further established that, after returning to work in January of 1984, McDaniel did not seek any medical attention for two years, until just prior to the date his doctor was scheduled to give his deposition. Faced with this evidence, the jury awarded actual damages in the amount of $82,068.00.

However, in addition to the evidence of medical expenses of $7,068, the jury was faced with other evidence, from which it determined that appellant was entitled to $12,500 for past, and $12,500 for future, physical pain and mental anguish; $12,500 for past, and $12,500 for future, loss of earning capacity; and $12,500 for past, and $12,500 for future, physical impairment, a total of $82,068. Other than their quoted statement, appellees have not undertaken to explain how the evidence fails to support the jury's findings.

Then, given the record from the first trial, I agree that appellees have not shown the original judgment might, and probably would have been, reversed if they had not lost the opportunity to appeal from it. Accordingly, I agree appellees have failed to satisfy this requirement for a bill of review.

I am authorized to add that Justice BOYD, who joins in the Court's judgment by which the bill of review judgment is reversed and the original judgment is reinstated, agrees with these comments.